# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

| | | |
|---|---|---|
| **FIRST BANK & TRUST,** | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| **vs.** | § | |
| | § | **Cause No.5:18-cv-00234-C** |
| **REAGOR AUTO MALL, LTD. d/b/a** | § | |
| **REAGOR-DYKES OF LEVELLAND and** | § | |
| **d/b/a REAGOR-DYKES IMPORTS,** | § | |
| **FIRSTCAPITAL BANK OF TEXAS, N.A.,** | § | |
| **BART REAGOR, RICK DYKES, SHANE** | § | |
| **SMITH, SHEILA MILLER, BRAD D.** | § | |
| **BURGESS, and KENNETH L. BURGESS,** | § | |
| | § | |
| *Defendant*. | § | |

## PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST DEFENDANTS REAGOR AND DYKES

STINSON, L.L.P.
Paul B. Lackey
State Bar. No. 00791061
paul.lackey@stinson.com
Michael P. Aigen
State Bar No. 24012196
michael.aigen@stinson.com
Matthew R. Miller
State Bar No. 24013165
matt.miller@stinson.com
3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Telecopier: (214) 560-2203

***ATTORNEYS FOR PLAINTIFF FIRST BANK & TRUST***

## <u>TABLE OF CONTENTS</u>

<u>Page No.</u>

TABLE OF CONTENTS ..........................................................................................ii

TABLE OF AUTHORITIES....................................................**Error! Bookmark not defined.**

I.   PRELIMINARY STATEMENT..............................................................................1

II.  SUMMARY JUDGMENT EVIDENCE..................................................................1

III. STATEMENT OF FACTS ....................................................................................2

     A.    The RD-Levelland Agreements and Guaranties........................................2

          1.    The RD-Levelland Business Loan Agreement and Promissory Note..............2

          2.    Reagor Guarantied the RD-Levelland Business Loan Agreement and Promissory Note.....................................................................................4

          3.    Dykes Guarantied the RD-Levelland Business Loan Agreement and Promissory Note.....................................................................................4

     B.    The RD-Imports Agreements and Guaranties. ..........................................5

          1.    The RD-Imports Business Loan Agreement and Promissory Note. .................5

          2.    Reagor Guarantied the RD-Imports Business Loan Agreement and Promissory Note.....................................................................................7

          3.    Dykes Guarantied the RD-Imports Business Loan Agreement and Promissory Note.....................................................................................8

     C.    Defendants Reagor and Dykes Breached Their Obligations Under the Relevant Agreements. ...............................................................................8

          1.    Dozens of RAM Checks Are Returned and Dishonored Resulting in the RAM-First Bank Account Being Overdrawn by Nearly $1 Million. ..........9

          2.    RAM Fails to Make Payments of Amounts Due and Owing Under the Business Loan Agreements and Promissory Notes.......................................10

          3.    RAM Files Bankruptcy...............................................................................11

          4.    First Bank Discovers RAM's Collateral Had Been Sold, Was Missing, Or Was Double Pledged. ...........................................................................11

5.    RAM's Prospect of Payment Was Impaired and First Bank Believes Itself Insecure. .............................................................................................12

6.    Defendants Have Failed To Make Any Payments of the Amounts Owed. ...................................................................................................12

IV. ARGUMENT AND AUTHORITIES ................................................................13

D.    Summary Judgment Standard. ..................................................................13

E.    First Bank is Entitled to Summary Judgment on its Claim for Breach of the RD-Levelland Reagor and Dykes Commercial Guaranties. .....................................14

F.    First Bank is Entitled to Summary Judgment on its Claim for Breach of the RD-Imports Reagor and Dykes Commercial Guaranties. ...........................................18

G.    Attorneys' Fees. .........................................................................................20

H.    Conclusion. ................................................................................................22

V.  REQUEST FOR RELIEF .................................................................................22

CERTIFICATE OF SERVICE ..................................................................................23

# TABLE OF AUTHORITIES

**Cases**                                                                                     **Page(s)**

*Anderson v. Bureau of Prisons*,
   3 F.3d 440, 1993 WL 347319 (5th Cir. Aug. 20, 1993) ...................................................... 13

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ........................................................................................................ 13

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ........................................................................................................ 13

*Cox. v. Lerman*,
   949 S.W.2d 527 (Tex. App.—Houston [14th Dist.] 1997, no writ) .......................... 15, 16, 19

*Davis v. Chevron U.S.A., Inc.*,
   14 F.3d 1082 (5th Cir.1994) ............................................................................................ 14

*Friou v. Phillips Petroleum Co.*,
   948 F.2d 972 (5th Cir. 1991) ........................................................................................... 14

*Health Care Serv. Corp. v. Methodist Hospitals of Dallas*,
   814 F.3d 242 (5th Cir. 2016) ........................................................................................... 13

*Hopper v. Frank*,
   16 F.3d 92 (5th Cir.1994) ................................................................................................ 14

*Little v. Liquid Air Corp.*,
   37 F.3d 1069 (5th Cir. 1994) ........................................................................................... 13

*Lujan v. Nat'l Wildlife Federation*,
   497 U.S. 871 (1990) .................................................................................................... 13, 14

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986) ........................................................................................................ 13

*In re Reagor Auto Mall, Ltd.*,
   No. 3:18-bk-33577 ........................................................................................................... 11

*Resolution Trust Corp. v. Northpark Joint Venture*,
   958 F.2d 1313 (5th Cir. 1992) ........................................................................... 16, 19, 20, 21

*Smith Intern., Inc. v. Egle Group, LLC*,
   490 F.3d 380 (5th Cir. 2007) ........................................................................................... 14

*Wachovia Bank, N.A. v. Metro Automation, Inc.*,
   No. 3:08-CV-2257-M, 2010 WL 2836176 (N.D. Tex. 2010) ............................................. 21

**Statutes**                                                                      **Page(s)**

Tex. Civ. Prac. & Rem. Code § 38.001 ...................................................................21

Fed. R. Civ. P. 56(a).................................................................................................13

Fed. R. Civ. P. 56(e).................................................................................................13

**PLAINTIFF'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY
JUDGMENT AGAINST DEFENDANTS REAGOR AND DYKES**

Plaintiff First Bank & Trust ("First Bank") respectfully submits this Brief in Support of its
Motion for Summary Judgment (the "Motion") against Defendants Reagor and Dykes.  In support
of its Motion, First Bank states as follows:

## I.      PRELIMINARY STATEMENT

The Reagor-Dykes entities engaged in a massive fraud on their lenders, which ended up
costing those lenders millions of dollars.  First Bank brings this motion for summary judgment on
its contractual claims against the individual Reagor-Dykes defendants who guaranteed the relevant
entity's obligations.

Defendants Bart Reagor ("Reagor") and Rick Dykes ("Dykes") absolutely and
unconditionally guaranteed the obligations of Reagor Auto Mall, Ltd., d/b/a Reagor-Dykes of
Levelland and d/b/a Reagor-Dykes Imports ("RAM").  Specifically, Reagor and Dykes guaranteed
the obligations of RAM under the RD-Levelland and RD-Imports loans and promissory notes.  So
when RAM's fraud was discovered, they were required to reimburse First Bank for the losses
caused by RAM.  More than $3 million remains due and owing on those notes, but Reagor and
Dykes have refused to pay those amounts.  The Court should find Reagor and Dykes jointly and
severally liable for the amounts they agreed to pay.

## II.      SUMMARY JUDGMENT EVIDENCE

In support of its Motion, First Bank submits and relies upon the evidence contained in the
attached *Appendix in Support of Plaintiff's Motion for Partial Summary Judgment against
Defendants Reagor and Dykes*, in addition to the pleadings on file in this matter.

### III.     STATEMENT OF FACTS

A.     **The RD-Levelland Agreements and Guaranties.**

**1.      The RD-Levelland Business Loan Agreement and Promissory Note.**

On or about September 29, 2017, RAM entered into a Business Loan Agreement (the "RD-Levelland Business Loan Agreement") with First Bank to obtain a loan for use in renewing RAM's existing floor plan line of credit at its Levelland location.  *See* RD-Levelland Business Loan Agreement, attached to the Affidavit of Jared Townsend (the "Townsend Aff.") as Ex. A-1 [APP 0014]; Townsend Aff., ¶ 3 [APP 0006]; Answer of Defendant Rick Dykes to First Bank & Trust's First Set of Requests for Admission ("Dykes Admissions Responses"), attached to the affidavit of Matthew R. Miller ("Miller Aff.") as Ex. B-1, Nos. 18, 19, 20 [APP 0200]; Answer of Rick Dykes to Third Amended Complaint ("Dykes Answer to TAC") [Dkt. 111], ¶ 11; Defendant Bart Reagor's Responses to Plaintiff First Bank & Trust's First Set of Requests for Admissions ("Reagor Admissions Responses"), attached to the Miller Aff. as Ex. B-2, Nos. 18, 19, 20 [APP 0213]; Defendant Bart Reagor's Answer to Plaintiff's First Amended Complaint and Application for Writ of Sequestration ("Reagor Answer to FAC") [Dkt. 53], ¶ 86.

RAM and First Bank also entered into a Promissory Note (the "RD-Levelland Promissory Note") payable to First Bank in the principal amount of $1,000,000.00.  *See* RD-Levelland Promissory Note, attached to the Townsend Aff. as Ex. A-2, at 1 [APP 0021]; Dykes Admissions Responses at 24, 25, 26 [APP 200]; Dykes Answer to TAC [Dkt. 111], ¶ 11; Reagor Admissions Responses at 24, 25, 26 [APP 0214]; Reagor Answer to FAC [Dkt. 53], ¶ 93.  The RD-Levelland Promissory Note is payable on demand, and if no demand is made, RAM is required to pay the loan in one payment of all outstanding principal and unpaid interest on October 1, 2018.  *See* RD-Levelland Promissory Note, at 1 [APP 0021] ("Payment.  Borrower will pay this loan in full immediately upon Lender's demand.  If no demand is made, Borrower will pay this loan in one

payment of all outstanding principal plus accrued unpaid interest on October 1, 2018."); Dykes Answer to TAC [Dkt. 111], ¶ 12; Dykes Admissions Responses, No. 28 [APP 0201].[1]

Under the RD-Levelland Business Loan Agreement and RD-Levelland Promissory Note, events of default include, *inter alia*, the borrower fails to make payments when due, the borrower's insolvency, the commencement of bankruptcy or insolvency proceedings, a material adverse change in the borrower's financial condition, First Bank believes the prospect of payment or performance of the RD-Levelland Promissory Note is impaired; or First Bank in good faith believes itself insecure.  *See* RD-Levelland Business Loan Agreement at 3-4 [APP 0016-17]; RD-Levelland Promissory Note at 1 [APP 0021]; Dykes Answer to TAC [Dkt. 111], ¶ 13.[2]

Upon the occurrence of an event of default, the entire amount of the loan becomes immediately due and payable without notice.  *See* RD-Levelland Business Loan Agreement at 4 [APP 0017]; RD-Levelland Promissory Note at 2 [APP 0022].  And in fact, upon an Event of Default defined as "Insolvency," which includes "the commencement of any proceeding under any bankruptcy or insolvency laws," the acceleration "shall be automatic and is not optional."  *See* RD-Levelland Business Loan Agreement at 4 [APP 0017] (setting out the "Effect of an Event of Default"); *id.* at 3-4 [APP 0016-17] (defining "Insolvency" as an Event of Default).

Pursuant to the RD-Levelland Business Loan Agreement and RD-Levelland Promissory Note, First Bank is also entitled to recover its attorneys' fees and costs incurred in connection with enforcing and/or collecting amounts due under those agreements.  *See* RD-Levelland Business Loan Agreement at 4 [APP 0017]; RD-Levelland Promissory Note at 2 [APP 0022].

---

[1] Reagor Answer to FAC [Dkt. 53], which is the most recent answer filed by Reagor, does not deny the terms of the RD-Levelland Promissory Note, as alleged by First Bank & Trust, but objects based on the best evidence rule and denies all allegations of such agreement which differ and/or deviate from its terms.  Reagor Answer to FAC [Dkt. 53], ¶¶ 11-13, 86-87; *see also* Reagor Admission Responses No. 28 (same) [APP 0215].
[2] *Id.*

**2.      Reagor Guarantied the RD-Levelland Business Loan Agreement and Promissory Note.**

On or about September 29, 2017, Defendant Reagor executed and delivered to First Bank a continuing Commercial Guaranty (the "RD-Levelland Reagor Commercial Guaranty"), pursuant to which Reagor, as Guarantor:

> [A]bsolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the indebtedness or against any collateral securing the indebtedness, this Guaranty or any other guaranty of the indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.   Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

*See* RD-Levelland Reagor Commercial Guaranty, attached to the Townsend Aff. as Ex. A-3, at 1 [APP 0024]; *see also id.* at 1-2 [APP 0024-25] (waiving the right "(C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person").   Reagor admits that he signed the RD-Levelland Reagor Commercial Guaranty.  *See* Reagor Admissions Responses, No. 27 [APP 0214]; Reagor Answer to FAC [Dkt. 53], ¶ 107.  Reagor's guaranty includes, *inter alia*, principal, interest, "overdraft indebtedness," attorneys' fees and court costs, and any other obligations or liabilities of RAM.  *See* RD-Levelland Reagor Commercial Guaranty, at 1 [APP 0024].

**3.      Dykes Guarantied the RD-Levelland Business Loan Agreement and Promissory Note.**

On or about September 29, 2017, Defendant Dykes executed and delivered to First Bank a continuing Commercial Guaranty (the "RD-Levelland Dykes Commercial Guaranty"), which

included terms identical to Reagor's guarantee, and therefore "[a]bsolutely and unconditionally guarantee[d] full and punctual payment and satisfaction of the indebtedness of [RAM] to [First Bank]." *See* RD-Levelland Dykes Commercial Guaranty, attached to the Townsend Aff. as Ex. A-4, at 1; *see also* id. at 1-2 [APP 0028-29]. Dykes admits signing the RD-Levelland Dykes Commercial Guaranty. *See* Dykes Admissions Responses No. 27 [APP 0201]; Dykes Answer to TAC [Dkt. 111], ¶¶ 25, 124. Dykes's guaranty also includes, *inter alia*, principal, interest, "overdraft indebtedness," attorneys' fees and court costs, and any other obligations or liabilities of RAM. *See* RD-Levelland Dykes Commercial Guaranty, at 1 [APP 0028].

### B.   **The RD-Imports Agreements and Guaranties.**

#### 1.   **The RD-Imports Business Loan Agreement and Promissory Note.**

On or about September 29, 2017, RAM entered into a Business Loan Agreement (the "RD-Imports Business Loan Agreement") with First Bank to obtain a loan for use in renewing RAM's existing floor plan line of credit at its Imports location. *See* RD-Imports Business Loan Agreement, attached to Townsend Aff. as Ex. A-5 [APP 0032]; Dykes Admissions Responses, Nos. 1, 2, 3 [APP 0198]; Reagor Admissions Responses, Nos. 1, 2, 3 [APP 0209-210].

RAM and First Bank also entered into a Promissory Note (the "RD-Imports Promissory Note") payable to First Bank in the principal amount of $2,500,000.00. *See* RD-Imports Promissory Note, attached to the Townsend Aff. as Ex. A-6, at 1 [APP 0039]; Dykes Admissions Responses, Nos. 7, 8, 9 [APP 0198-99]; Reagor Admissions Responses, Nos. 7, 8, 9 [APP 0210-11]. Other than the difference in the principal amount of the loan,[3] the relevant terms of the RD-Imports Business Loan Agreement and RD-Imports Promissory Note are virtually identical to the terms of the RD-Levelland Business Loan Agreement and RD-Imports Promissory Note. Among

---

[3] RAM was the entity borrowing money under both notes, but was described as "Reagor Auto Mall Ltd. dba Reagor-Dykes of Levelland" in one note, and "Reagor Auto Mall, Ltd. dba Reagor-Dykes Imports" in the other.

other things, the RD-Imports Promissory Note is payable on demand, and if no demand is made,

RAM is required to pay the loan in one payment of all outstanding principal and unpaid interest

on October 1, 2018.  *See* RD-Imports Promissory Note, at 1 [APP 0039]; Dykes Admissions

Responses, No. 12 [APP 0199].[4]

Further, under the RD-Imports Business Loan Agreement and RD-Imports Promissory

Note, events of default include, *inter alia*, the borrower fails to make payments when due, the

borrower's insolvency, the commencement of bankruptcy or insolvency proceedings, a material

adverse change in the borrower's financial condition, First Bank believes the prospect of payment

or performance of the RD-Imports Promissory Note is impaired; or First Bank in good faith

believes itself insecure.  *See* RD-Imports Business Loan Agreement at 3-4 [APP 0034-35]; R-D

Imports Promissory Note at 1 [APP 0039]; Dykes Answer to TAC [Dkt. 111], ¶ 34.[5]

Upon the occurrence of an event of default, the entire amount of the loan becomes

immediately due and payable without notice.  *See* RD-Imports Business Loan Agreement at 4

[APP 0035]; RD-Imports Promissory Note at 2 [APP 0040].  And, upon an Event of Default

defined as "Insolvency," which includes "the commencement of any proceeding under any

bankruptcy or insolvency laws," the acceleration "shall be automatic and is not optional."  *See* RD-

Imports Business Loan Agreement at 4 [APP 3517] (setting out the "Effect of an Event of

Default"); *id*. at 3-4 [APP 0034-35] (defining "Insolvency" as an Event of Default).

Pursuant to the RD-Imports Business Loan Agreement and RD-Imports Promissory Note,

First Bank is also entitled to recover its attorneys' fees and costs incurred in connection with

---

[4] The Reagor Admissions Responses do not deny that the RD-Imports Promissory Note required RAM to pay all outstanding principal and all accrued interest on October 1, 2018, but instead objects on the basis of the best evidence rule and denies all allegations and/or characterizations that differ and/or deviate from those terms.  Reagor Admissions Responses, No. 11.
[5] *Id*.

enforcing and/or collecting amounts due under those agreements.  *See* RD-Imports Business Loan Agreement at 4 [APP 0035]; RD-Imports Promissory Note at 2 [APP 0040].

> ### 2.    Reagor Guarantied the RD-Imports Business Loan Agreement and Promissory Note.

On or about September 29, 2017, Reagor executed and delivered to First Bank a continuing Commercial Guaranty (the "RD-Imports Reagor Commercial Guaranty"), pursuant to which Reagor, as Guarantor:

> [A]bsolutely and unconditionally guarantees full and punctual payment and satisfaction of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and the Related Documents. This is a guaranty of payment and performance and not of collection, so Lender can enforce this Guaranty against Guarantor even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the indebtedness or against any collateral securing the indebtedness, this Guaranty or any other guaranty of the indebtedness.  Guarantor will make any payments to Lender or its order, on demand, in legal tender of the United States of America, in same-day funds, without set-off or deduction or counterclaim, and will otherwise perform Borrower's obligations under the Note and Related Documents.   Under this Guaranty, Guarantor's liability is unlimited and Guarantor's obligations are continuing.

*See* RD-Imports Reagor Commercial Guaranty, attached to the Townsend Aff. as Ex. A-7, at 1 [APP 0042]; *see also id.* at 1-2 [APP 0042-43] (waiving the right "(C) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (D) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person").  Reagor admits to signing the RD-Imports Commercial Guaranty. *See* Reagor Admissions Responses, No. 10 [APP 0211]; Reagor Answer to FAC [Dkt. 53], ¶ 39. Reagor's guaranty includes, *inter alia*, principal, interest, "overdraft indebtedness," attorneys' fees and court costs, and any other obligations or liabilities of RAM.  RD-Imports Reagor Commercial Guaranty, at 1 [APP 0042].

3.      **Dykes Guarantied the RD-Imports Business Loan Agreement and
         Promissory Note.**

On or about September 29, 2017, Dykes executed and delivered to First Bank a continuing

Commercial Guaranty (the "RD-Imports Dykes Commercial Guaranty"), which included terms

identical to Reagor's guarantee, and therefore "[a]bsolutely and unconditionally guarantee[d] full

and punctual payment and satisfaction of the indebtedness of [RAM] to [First Bank]."  *See* RD-

Imports Dykes Commercial Guaranty, attached to the Townsend Aff. as Ex. A-8, at 1 [APP 0046];

*see also id*. at 1-2 [APP 0046-47].   Dykes admits signing the RD-Imports Dykes Commercial

Guaranty.  *See* Dykes Admissions Responses No. 10 [APP 0199]; Dykes Answer to TAC [Dkt.

111], ¶¶ 41, 152-153.   Dykes's guaranty includes, *inter alia*, principal, interest, "overdraft

indebtedness," attorneys' fees and court costs, and any other obligations or liabilities of RAM.  *See*

RD-Imports Dykes Commercial Guaranty, at 1 [APP 0046]; Dykes Answer to TAC [Dkt. 111], ¶

42.

C.      <u>**Defendants Reagor and Dykes Breached Their Obligations Under the
         Relevant Agreements.**</u>

As described more particularly below, several events of default have occurred under the

relevant agreements, causing all amounts under the RD-Levelland and RD-Imports Business Loan

Agreements and Promissory Notes to become immediately due in full.  Accordingly, Reagor and

Dykes are required under the RD-Levelland Commercial Guaranties to pay those amounts.

However, none of them have paid the amounts they owe.

Notably, Dykes admits that events of default occurred on the RD-Levelland Promissory

Note, the RD-Levelland Business Loan Agreement, the RD-Levelland Dykes Commercial

Guaranty, the RD-Imports Promissory Note, the RD-Imports Business Loan Agreement, and the

RD-Imports Dykes Commercial Guaranty.  *See* Dykes Admissions Responses, Nos. 14, 16, 17,

31, 33, 34 [APP 0199, 0201].  Reagor claims to have insufficient information to admit or deny that

events of default occurred under those agreements.  *See Reagor Admissions Responses, Nos. 14,* 16, 17, 31, 33, 34 [APP 0199-200, 0212-13].

> **1.      Dozens of RAM Checks Are Returned and Dishonored Resulting in the RAM-First Bank Account Being Overdrawn by Nearly $1 Million.**

At the request of RAM, First Bank opened and maintained a bank account for the benefit of RAM (the "RAM-First Bank Account").  *See* Townsend Aff., ¶ 12 [APP 0007].  Well after the close of business hours on August 1, 2018, First Bank received notice of the dishonor and return of 24 checks deposited in the RAM-First Bank Account totaling $1,190,916.00.  *See* Townsend Aff., ¶ 13, Ex. A-14 [APP 0119-142].  Then, on August 3, 2018, First Bank received notice of the return and nonpayment of 10 more checks deposited in the RAM-First Bank Account totaling $502,908.00.  *See* Townsend Aff., ¶ 14, Ex. A-14 [APP 00143-152].  Notably, Dykes' interrogatory responses admit that an accountant for the Reagor Dykes entities concluded they "had been rotating negative balances at various banks – sometimes dozens of times a month – to generate short term credit," which "amounted to check-kiting."  *See* Dykes Interrogatory Responses, attached to the Miller Aff. as Ex. B-5, Interrogatory Nos. 8, 10 [APP 0359, 0360].

First Bank thereafter made demand on all Defendants for payment of the checks dishonored.  *See* Townsend Aff. , ¶ 17 [APP 0009], Exs. A-13 [APP -117], A-14 [APP 0154].  However, no payments were made by RAM or Defendants.  *See* Townsend Aff., ¶ 18 [APP 0009]; Dykes Admissions Responses, No. 40 [APP 0202].[6]  After all lawful offsets and credits, the RAM-

---

[6] Reagor denies having sufficient information to admit or deny the request.  Reagor Admissions Responses, No. 40 [APP 0218].

First Bank Account remains overdrawn by $993,115.83.[7]  *See* Townsend Aff., ¶ 16 [APP 0009], Ex. A-11 [APP 0054]; Dykes Admissions Responses Nos. 39, 40 [APP 0202].[8]

### 2. RAM Fails to Make Payments of Amounts Due and Owing Under the Business Loan Agreements and Promissory Notes.

RAM failed to make all payments under the RD-Levelland Promissory Note and the RD-Imports Promissory Note when due.  *See* Townsend Aff., ¶ 11 [APP 0007]; Dykes Admissions Responses Nos. 12, 29 [APP 0199, 201].[9]  Both the RD-Levelland Promissory Note and the RD-Imports Promissory Note were required to be paid in fully on or before October 1, 2018.  *See* RD-Levelland Promissory Note at 1 [APP 0021]; RD-Imports Promissory Note at 1 [APP 0039].  As of August 15, 2019, $1,034,521.05[10] remains due and outstanding on the RD-Levelland Promissory Note.  *See* Townsend Aff., ¶ 11 [APP 0007].  As of August 15, 2019, $2,237,534.74[11] remains due and outstanding on the RD-Imports Promissory Note.  *See* Townsend Aff., ¶ 11 [APP 0007].

---

[7] As described more particularly in Plaintiff's Third Amended Complaint and Application for Writ of Sequestration [Dkt. 103], checks written on the RAM-First Bank Account and dishonored by other banks resulted in the RAM-First Bank Account being overdrawn by $1,595,395.83.  *See* Townsend Aff., ¶ 15 [APP 0009], Ex. A-11 [APP 0054].  First Bank filed a challenge with the Federal Reserve Bank in connection with several checks that were not returned on a timely basis by other banks.  *See* Townsend Aff., ¶ 16 [APP 0009], Ex. A-12 [APP 0056-115].  Thereafter, the Federal Reserve Bank credited First Bank $602,280 in connection with late returns of checks written on First Bank's accounts.  *See* Townsend Aff., ¶ 16.  After crediting those amounts, the RAM-First Bank Account remains overdrawn by $993,115.83.  *See id.*

[8] Reagor does not deny that RAM's accounts were overdrawn and that he failed to pay any portion of the amount the account was overdrawn, but states that he lacks knowledge or information sufficient to respond to the requests. Reagor Admissions Responses, Nos. 39, 40 [APP 0218].

[9] Reagor does not deny that RAM failed to make all payments under the RD-Levelland Promissory Note and the RD-Imports Promissory Note when due, but states that he lacks sufficient information to admit or deny that such payments were made.  Reagor Admissions Responses Nos. 12, 29 [APP 0211-12, 215].

[10] This amount includes a principal amount of $966,825.00, plus late fees of $514.37, interest at the rate of 6.125% per annum through November 2, 2018 of $20,486.12, and daily interest at the rate of 6.125% per annum of $164.494531 per day through August 15, 2019.  *See* Townsend Aff., ¶ 11 [APP 0007].

[11] This amount includes a principal amount of $2,090,220.47, plus late fees of $1,201.50, interest at the rate of 6.125% per annum through November 2, 2019 of $45,249.09, and daily interest at the rate of 6.125% per annum of $355.627788 per day through August 15, 2019.  *See* Townsend Aff., ¶ 11 [APP 0007].

3.      **RAM Files Bankruptcy.**

On or about November 2, 2018, RAM filed for bankruptcy in the Northern District of Texas. *See In re Reagor Auto Mall, Ltd.*, No. 3:18-bk-33577.

4.      **First Bank Discovers RAM's Collateral Had Been Sold, Was Missing, Or Was Double Pledged.**

After conducting an investigation, First Bank discovered at RAM's Levelland location that of the 40 vehicles on the Levelland floor plan, 21 had been sold, but were still floor planned, allowing RAM to continue to obtain financing payments from First Bank while avoiding and/or delaying paying First Bank the amounts owed to it for the sold inventory. *See* Townsend Aff., ¶ 22 [APP 0010-11]. The payoff amount for those 21 vehicles was $420,025. *Id.* In addition, 1 vehicle was missing with no explanation as to its location. *Id.* For this missing vehicle, RAM owes $31,750. *Id.* Further, there were 7 instances of RAM "double-flooring" vehicles pledged as collateral to First Bank, meaning that they were pledged as collateral to more than one lender, allowing RAM to obtain double financing on those vehicles. *Id.*

Similarly, 43 of the 101 units on the Imports floorplan had been sold, but were still floor planned, allowing RAM to continue to obtain financing payments from First Bank while avoiding and/or delaying paying First Bank the amounts owed for the sold inventory. *See* Townsend Aff., ¶ 23 [APP 0011]. The payoff amount that RAM owes First Bank for those 43 vehicles is $1,084,025. *Id.* In addition, 6 floorplanned vehicles were missing without explanation as to their locations. *Id.* For those 6 vehicles, RAM owes First Bank $69,750. *Id.* Further, 12 units were double floored, meaning they were pledged as collateral to more than one lender, allowing RAM to obtain double financing on those vehicles. *Id.*

In fact, one of the accountants for the Reagor-Dykes dealerships admitted that their internal investigation has revealed that there was widespread double flooring of vehicles. Specifically,

Tim Connor, an accountant with the Reagor Dykes dealerships in bankruptcy, testified that internal audits at the Reagor Dykes dealerships had revealed that as of August 13, 2018, 185 vehicles had been double floored. *See* Deposition of Tim Connor, attached to the Miller Aff. as Ex. B-3, at 29:1-16 [APP 0254]. Similarly, Dykes testified that "I was told that it was – involved around 175 vehicles, but I have never heard an amount." *See* Deposition of Rick Dykes, attached to the Miller Aff. as Ex. B-4, at 23:24 – 24:5 [APP 0318-19]; *see also* Dykes Interrogatory Responses, attached to the Miller Aff. as Ex. B-5, Interrogatory Nos. 8 [APP 0358] ("Ms. Martin [an employee on the financial staff of the Reagor Dykes entities] then informed Mr. Dykes for the first time that certain vehicles in RDAG's inventory had been – as she put it – "double floored" – that is, the same vehicle had pledged as collateral more than once in order to receive multiple advances under Ford Credit's floor-plan financing facility.").

**5.    RAM's Prospect of Payment Was Impaired and First Bank Believes Itself Insecure.**

As a result of these and other events and occurrences, the prospect of payment or performance under the RD-Levelland Business Loan Agreement, RD-Levelland Promissory Note, RD-Imports Business Loan Agreement, and RD-Imports Promissory Note was impaired, and First Bank in good faith believes itself insecure. *See* Townsend Aff., ¶ 26 [APP 0011].

**6.    Defendants Have Failed To Make Any Payments of the Amounts Owed.**

Despite demand, neither Reagor nor Dykes have made payment of the amounts owed under the RD-Levelland Business Loan Agreement, RD-Levelland Promissory Note, RD-Levelland Reagor Commercial Guaranty, or RD-Levelland Dykes Commercial Guaranty, nor under the RD-Imports Business Loan Agreement, RD-Imports Promissory Note, RD-Imports Reagor Commercial Guaranty, and RD-Imports Dykes Commercial Guaranty. *See* Townsend Aff., ¶ 27 [APP 0011-12].

## IV.   **ARGUMENT AND AUTHORITIES**

D.   **Summary Judgment Standard.**

Federal Rule of Civil Procedure 56(a) provides that "[a] party may move for summary judgment, identifying each claim or defense – or party of each claim or defense – on which summary judgment is sought." FED. R. CIV. P. 56(a).  The Court should render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Health Care Serv. Corp. v. Methodist Hospitals of Dallas*, 814 F.3d 242, 248 (5th Cir. 2016).  The moving party bears the burden of showing that the facts material to the motion are not in dispute.  *Celotex*, 477 U.S. at 323.  A nonmoving party, on the other hand, may not avoid summary judgment merely by showing some facts are in dispute; rather, it must establish that there are factual issues sufficient to permit a rational trier of fact to find in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  Moreover, the nonmoving party may not rest on mere allegations or denials but must demonstrate on the record the existence of specific facts which create a genuine issue for trial.  *See Anderson v. Bureau of Prisons*, 3 F.3d 440, 1993 WL 347319, at *1 (5th Cir. Aug. 20, 1993) ("To avoid a summary judgment, the non-moving party must adduce admissible evidence which creates a fact issue concerning the existence of every essential component of that party's case. Unsubstantiated assertions of an actual dispute will not suffice.").

When the moving party has carried its burden of showing that no genuine issue of material fact exists, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial."  FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  This burden is not satisfied with "some metaphysical doubt as to the material facts," *Matsushita*, 475 U.S. at 586, by "conclusory allegations," *Lujan v. Nat'l Wildlife*

*Federation*, 497 U.S. 871, 871–73 (1990), by "unsubstantiated assertions," *Hopper v. Frank*, 16 F.3d 92 (5th Cir.1994), or by only a "scintilla" of evidence, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir.1994).  Any factual controversies are resolved in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.   Courts do not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts.  *See Lujan*, 497 U.S. at 888.  Thus, if the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment is appropriate.  *See Friou v. Phillips Petroleum Co.*, 948 F.2d 972, 974 (5th Cir. 1991).

"In Texas, [t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach."  *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

E.   **First Bank is Entitled to Summary Judgment on its Claim for Breach of the RD-Levelland Reagor and Dykes Commercial Guaranties.**

On September 29, 2017, RAM and First Bank entered into a series of agreements related to a loan from First Bank to RAM in the principal amount of $1,000,000.00.  *See* RD-Levelland Business Loan Agreement [APP 0014]; RD-Levelland Promissory Note [APP 0021]; Townsend Aff., ¶¶ 3-4 [APP 0006].

Thereafter, certain events of default occurred under the RD-Levelland Business Loan Agreement and RD-Levelland Promissory Note.  Townsend Aff., ¶¶ 11-27 [APP 0007-12]; Dykes Admissions Responses Nos. 31, 33 [APP 0201].[12]  Those events of default included, but were not

---

[12] Reagor does not deny that events of default occurred under the RD-Levelland Business Loan Agreement and RD-Levellant Promissory Note, but states that he lacks sufficient information to admit or deny the request.  Reagor Admissions Responses, Nos. 31, 33 [APP 0215-16].

limited to: 1) RAM's failure to make all payments when due, including the failure to pay all outstanding principal and interest on or before October 1, 2018; 2) RAM's insolvency; 3) RAM's commencement of bankruptcy or insolvency proceedings; 4) a material adverse change in the RAM's financial condition; 5) First Bank believes the prospect of payment or performance of the RD-Levelland Promissory Note is impaired; and 6) First Bank in good faith believes itself insecure.  *See* RD-Levelland Business Loan Agreement at 3-4 [APP 0016-17]; RD-Levelland Promissory Note at 1; Townsend Aff., ¶¶ 11-27 [APP 0007-12]; Dykes Answer to TAC [Dkt. 111], ¶ 12.

RAM has not paid the amounts due and owing under the RD-Levelland Business Loan Agreement or the RD-Levelland Promissory Note.  *See* Townsend Aff., ¶ 11 [APP 0007].  As of August 15, 2019, $1,034,521.05[13] remains due and outstanding on the RD-Levelland Promissory Note.  *See id.*

Defendants Reagor and Dykes entered into contracts pursuant to which they guaranteed the obligations of RAM under the RD-Levelland Business Loan Agreement and RD-Levelland Promissory Note.  *See* RD-Levelland Reagor Commercial Guaranty [APP 0024]; RD-Levelland Dykes Commercial Guaranty [APP 0028]; Dykes Admissions Responses, No. 27 [APP 0201]; Reagor Admissions Responses, No. 27 [APP 0214].   Under the RD-Levelland Commercial Guaranties, Reagor and Dykes are liable for those deficiencies.  *See* RD-Levelland Reagor Commercial Guaranty [APP 0024]; RD-Levelland Dykes Commercial Guaranty [APP 0028].

Texas law recognizes two principal types of guaranties: "a guaranty of collection (or conditional guaranty) and a guaranty of payment (or unconditional guaranty)."  *Cox. v. Lerman,*

---

[13] This amount includes a principal amount of $966,825.00, plus late fees of $514.37, interest at the rate of 6.125% per annum through November 2, 2018 of $20,486.12, and daily interest at the rate of 6.125% per annum of $164.494531 per day through August 15, 2019.  *See* Townsend Aff., ¶ 11 [APP 0007].

949 S.W.2d 527, 530 (Tex. App.—Houston [14th Dist.] 1997, no writ).  The guaranties signed by Reagor and Dykes specifically provide that they are "absolute[] and unconditional[]," that they are "a guaranty of payment and performance and not of collection" so they can be enforced "even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the indebtedness or against any collateral securing the indebtedness, this Guaranty or any other guaranty of the indebtedness," and that they "guarantee[] the full and punctual payment and satisfaction of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents."  *See RD-Levelland Reagor Commercial Guaranty*, at 1 [APP 0024]; RD-Levelland Dykes Commercial Guaranty, at 1 [APP 0028]; *see also* RD-Levelland Reagor Commercial Guaranty at 1-2 [APP 0024-25] (waiving right to presentment or demand, right to resort or presentment against any person, including RAM or any other guarantor, and to proceed against any collateral, other guarantor, or any other person); RD-Levelland Dykes Commercial Guaranty at 1-2 [APP –28-29] (same).  Thus, First Bank does not need to first proceed against the underlying debtor (RAM) or collateral before being entitled to enforce the guaranty.  *See Cox*, 949 S.W.2d at 530; *Resolution Trust Corp. v. Northpark Joint Venture*, 958 F.2d 1313, 1321 n.13 (5th Cir. 1992) (". . . a guaranty is absolute and unconditional if it requires no condition precedent to its enforcement against the guarantor other than mere default by the principal debtor.") (internal quotations omitted).  Further, the Business Loan Agreement specifically provides that Reagor and Dykes' guaranties are for an "Unlimited" amount. *See* RD-Levelland Business Loan Agreement, at 2 [APP 0015]; *see also* RD-Levelland Reagor Commercial Guaranty at 1 [APP 0024] (stating that Reagor "guarantees full and punctual payment and satisfaction of the ***indebtedness*** of Borrower to Lender") (emphasis added); RD-Levelland Dykes Commercial Guaranty at 1 [APP 0028] (same); *Resolution Trust Corp.*, 958 F.2d at 1320-

21 (noting that a guarantee of "indebtedness" is a term of art that encompasses the state of being in debt without regard to the ability or inability to pay, and therefore a guarantee to pay "any and all indebtedness" required the defendant "to satisfy the debt up to the express limit of their guaranties").  Thus, Reagor and Dykes are liable for the immediate payment of all amounts owed by RAM.

However, despite demand, neither Reagor nor Dykes have paid those deficiencies.  *See* Townsend Aff., ¶ 11 [APP 0007]; Dykes Admissions Responses, No. 30 [APP 0201] *see also* Defendant Bart Reagor's Responses and Objections to Plaintiff First Bank & Trust's First Set of Interrogatories ("Reagor's Interrogatory Responses"), attached to the Miller Aff. as Ex. B-6, at No. 14 [APP 0373] (stating that "First Bank made demand for payment upon RAM, Reagor and Dykes to pay the amounts owing on the promissory notes").  Accordingly, Reagor and Dykes have breached the RD-Levelland Reagor Commercial Guaranty and the RD-Levelland Dykes Commercial Guaranty.  *See* Dykes Admissions Responses, No. 34.[14]

As a result of Reagor and Dykes' breaches of the RD-Levelland Commercial Guaranties, First Bank has suffered damages in the amount of $1,034,521.05 in connection with RAM's unpaid business loan and promissory note.  *See* Townsend Aff., ¶ 11 [APP 0007].  In addition, the RD-Levelland Promissory Note has a maturity date of October 1, 2018, and states that the post maturity rate of interest is the lesser of 18% per annum or the maximum rate allowable by law.  RD-Levelland Promissory Note at 1 [APP 0021].  Therefore, interest should continue to accrue on the amount owed by Reagor and Dykes at 18% per annum.

---

[14] Reagor does not deny that events of default occurred under the RD-Levelland Commercial Guaranty, but merely states that he lacks sufficient knowledge to respond.  Reagor Admissions Responses, No. 34 [APP 0216].

F.    **First Bank is Entitled to Summary Judgment on its Claim for Breach of the RD-Imports Reagor and Dykes Commercial Guaranties.**

On September 29, 2017, RAM and First Bank entered into a series of agreements related to a loan from First Bank to RAM in the principal amount of $2,500,000.00.  *See* RD-Imports Business Loan Agreement [APP 0032]; RD-Imports Promissory Note [APP 0039]; Townsend Aff., ¶¶ 6-7 [APP 006].

Thereafter, certain events of default occurred under the RD-Imports Business Loan Agreement and RD-Imports Promissory Note.  Townsend Aff., ¶¶ 11-27 [APP 0007-12]; Dykes Admissions Responses Nos. 14, 16 [APP 199].[15]  Those events of default included, but were not limited to: 1) RAM's failure to make all payments when due, including the failure to pay all outstanding principal and interest on or before October 1, 2018; 2) RAM's insolvency; 3) RAM's commencement of bankruptcy or insolvency proceedings; 4) a material adverse change in the RAM's financial condition; 5) First Bank believes the prospect of payment or performance of the RD-Imports Promissory Note is impaired; and 6) First Bank in good faith believes itself insecure.  *See* RD-Imports Business Loan Agreement at 3-4 [APP 0034-35]; RD-Imports Promissory Note at 1 [APP 0039]; Townsend Aff., ¶¶ 11-27 [APP 0007-12]; Dykes Answer to TAC [Dkt. 111], ¶ 29-30.

RAM has not paid any of the amounts due and owing under the RD-Imports Business Loan Agreement or the RD-Imports Promissory Note.  *See* Townsend Aff., ¶ 11 [APP 0007].  As of August 15, 2019, $2,237,534.74[16] remains due and outstanding on the RD-Imports Promissory Note.  *See* Townsend Aff., ¶ 11 [APP 0007].

---

[15] Reagor does not deny that events of default occurred under the RD-Imports Business Loan Agreement and RD-Imports Promissory Note, but states that he lacks sufficient information to respond to the request.  *See* Reagor Admissions Responses, Nos. 14, 16 [APP 0212].

[16] This amount includes a principal amount of $2,090,220.47, plus late fees of $1,201.50, interest at the rate of 6.125% per annum through November 2, 2019 of $45,249.09, and daily interest at the rate of 6.125% per annum of $355.627788 per day through August 15, 2019.  *See* Townsend Aff., ¶ 11 [APP 0007].

Defendants Reagor and Dykes entered into contracts pursuant to which they guaranteed the obligations of RAM under the RD-Imports Business Loan Agreement and RD-Imports Promissory Note. *See* RD-Imports Reagor Commercial Guaranty [APP 0042]; RD-Imports Dykes Commercial Guaranty [APP 0046]; Dykes Admissions Responses, No. 10 [APP 0199]; Reagor Admissions Responses, No. 10 [APP 0211].   Under the RD-Imports Commercial Guaranties, Reagor and Dykes are liable for those deficiencies. *See* RD-Imports Reagor Commercial Guaranty [APP 0042]; RD-Imports Dykes Commercial Guaranty [APP 0046].

The guaranties signed by Reagor and Dykes specifically provide that they are "absolute[] and unconditional[]," that they are "a guaranty of payment and performance and not of collection" so they can be enforced "even when Lender has not exhausted Lender's remedies against anyone else obligated to pay the indebtedness or against any collateral securing the indebtedness, this Guaranty or any other guaranty of the indebtedness," and that they "guarantee[] the full and punctual payment and satisfaction of the indebtedness of Borrower to Lender, and the performance and discharge of all Borrower's obligations under the Note and Related Documents."  *See* RD-Imports Reagor Commercial Guaranty, at 1 [APP 0042]; RD-Imports Dykes Commercial Guaranty, at 1 [APP 0046]; *see also* RD-Imports Reagor Commercial Guaranty at 1-2 [APP 0042-43] (waiving right to presentment or demand, right to resort or presentment against any person, including RAM or any other guarantor, and to proceed against any collateral, other guarantor, or any other person); RD-Imports Dykes Commercial Guaranty at 1-2 [APP 0046-47] (same).  Thus, First Bank does not need to first proceed against the underlying debtor (RAM) or collateral before being entitled to enforce the guaranty.  *See Cox*, 949 S.W.2d at 530; *Resolution Trust Corp.*, 958 F.2d at 1321 n.13.  Further, the Business Loan Agreement specifically provides that Reagor and Dykes' guaranties are for an "Unlimited" amount. *See* RD-Imports Business Loan Agreement, at

2 [APP 0033]; *see also* RD-Imports Reagor Commercial Guaranty, at 1 [APP 0042] (stating that Reagor "guarantees full and punctual payment and satisfaction of the ***indebtedness*** of Borrower to Lender") (emphasis added); RD-Levelland Dykes Commercial Guaranty at 1 [APP 0046] (same); *Resolution Trust Corp.*, 958 F.2d at 1320-21.  Thus, Reagor and Dykes are liable for the immediate payment of all amounts owed by RAM.

However, despite demand, neither Reagor nor Dykes have paid those deficiencies.  *See* Townsend Aff., ¶ 11 [APP 0007]; Dykes Admissions Responses, No. 13 [APP 0199]. Accordingly, Reagor and Dykes have breached the RD-Imports Reagor Commercial Guaranty and the RD-Imports Dykes Commercial Guaranty.  *See* Dykes Admissions Responses, No. 17 [APP 0199].[17]

As a result of Reagor and Dykes' breaches of the RD-Imports Commercial Guaranties, First Bank has suffered damages in the amount of $2,237,534.74 in connection with RAM's unpaid business loan and promissory note.  *See* Townsend Aff., ¶ 11 [APP 0007].  In addition, the RD-Imports Promissory Note has a maturity date of October 1, 2018, and states that the post maturity rate of interest is the lesser of 18% per annum or the maximum rate allowable by law.  *See* RD-Imports Promissory Note, at 1 [APP 0039].  Therefore, interest should continue to accrue on the amount owed by Reagor and Dykes at 18% per annum.

G.      **Attorneys' Fees.**

First Bank has incurred, and continues to incur, expenses and attorneys' fees in connection of its pursuit of the amounts owed by RAM and the Defendants.  *See* Townsend Aff., ¶ 29 [APP 0012].

---

[17] Dykes does not deny that events of default occurred under the RD-Imports Commercial Guaranty, but merely states that he lacks sufficient knowledge to respond.  Reagor Admissions Responses, No. 17 [APP 0213].

First Bank is entitled to recover its attorneys' fees from Reagor and Dykes pursuant to the RD-Levelland Business Loan Agreement, the RD-Levelland Promissory Note, the RD-Levelland Reagor Commercial Guaranty, and the RD-Levelland Dykes Commercial Guaranty, as well as TEX. CIV. PRAC. & REM. CODE § 38.001. *See* RD-Levelland Business Loan Agreement at 4 [APP 0017]; RD-Levelland Promissory Note at 2 [APP 0022]; RD-Levelland Reagor Commercial Guaranty at 1 [APP 0024]; RD-Levelland Dykes Commercial Guaranty at 1 [APP 0028]; *see also* TEX. CIV. PRAC. & REM. CODE § 38.001.

Further, First Bank is entitled to recover its attorneys' fees from Reagor and Dykes pursuant to the RD-Imports Business Loan Agreement, the RD-Imports Promissory Note, the RD-Imports Reagor Commercial Guaranty, and the RD-Imports Dykes Commercial Guaranty, as well as TEX. CIV. PRAC. & REM. CODE § 38.001. *See* RD-Imports Business Loan Agreement at 4 [APP 0035]; RD-Imports Promissory Note at 2 [APP 0040]; RD-Imports Reagor Commercial Guaranty at 1 [APP 0042]; RD-Imports Dykes Commercial Guaranty at 1 [APP 0046]; *see also* TEX. CIV. PRAC. & REM. CODE § 38.001.

Accordingly, First Bank is entitled to an order providing that it is entitled to recover its attorneys' fees and expenses, and respectfully requests that the Court grant First Bank summary judgment on its claim for the same, subject to submission of proof as to the amount and reasonableness of the fees and expenses on a schedule to be set by the Court. *See, e.g., Wachovia Bank, N.A. v. Metro Automation, Inc.*, No. 3:08-CV-2257-M, 2010 WL 2836176, at *4 (N.D. Tex. 2010) (awarding summary judgment to credit for attorneys' fees in breach of guaranty action, subject to the creditor submitting proof of its attorneys' fees and costs"); *see also Resolution Trust Corp.*, 958 F.2d at 1322 (affirming award to holder of guaranty attorneys' fees based upon sworn statement submitted by counsel representing holder of guaranty).

H.    **Conclusion.**

As such, First Bank requests that the Court enter judgment against the following individual Defendants for the following amounts, for which all liability should be joint and several:

a)    $3,272,055.70 against Bart Reagor, plus interest at the rate of 18% per annum from August 15, 2019, for breach of the RD-Levelland Reagor Commercial Guaranty, and the RD-Imports Reagor Commercial Guaranty;

b)    $3,272,055.70 against Rick Dykes, plus interest at the rate of 18% per annum from August 15, 2019, for breach of the RD-Levelland Dykes Commercial Guaranty, the RD-Imports Dykes Commercial Guaranty; and

c)    Attorneys' fees and costs in an amount to be determined by the Court.

## V.    REQUEST FOR RELIEF

For the foregoing reasons, Plaintiff respectfully requests that its Motion for Summary Judgment be granted in its entirety, and that the Court award Plaintiff whatever further relief the Court deems necessary and just.

Respectfully submitted,

**STINSON LEONARD STREET LLP**

By: */s/ Paul B. Lackey*
    Paul B. Lackey
    State Bar. No. 00791061
    paul.lackey@stinson.com
    Michael P. Aigen
    State Bar No. 24012196
    michael.aigen@stinson.com
    Matthew R. Miller
    State Bar No. 24013165
    matt.miller@stinson.com

3102 Oak Lawn Avenue, Suite 777
Dallas, Texas 75219-4259
Telephone: (214) 560-2201
Telecopier: (214) 560-2203

**ATTORNEYS FOR PLAINTIFF FIRST
BANK & TRUST**

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on August 30, 2019, a true and correct copy of the foregoing document was served on all counsel of record via the Court's electronic filing system.

*/s/ Matthew R. Miller*
    Matthew R. Miller